# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW HAMPSHIRE

Edward S. Weber

    v.                                    Civil No. 09-cv-449-PB

State of New Hampshire

### REPORT AND RECOMMENDATION

    Before the Court is Edward Weber's complaint (document no. 1), filed pro se and in forma pauperis, against the State of New Hampshire, pursuant to 42 U.S.C. § 1983, seeking damages. The matter is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915(e)(2); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B).

### Standard of Review

   Under this Court's local rules, when a person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(1). In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully

pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." Id. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Id. (citation omitted). Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

## Background

Edward Weber is a forty-five year old resident of the Concord, New Hampshire area. Weber states that doctors, family members, and people in the state court system have lied to have him committed to the New Hampshire Hospital and put under the care of a guardian, and tried to forcibly medicate him, all against his will. Weber also claims that the Belmont Police Department improperly detained him and used excessive force against him by keeping him in handcuffs for five hours while he was at the Laconia Hospital being evaluated for involuntary civil commitment. Papers attached to Weber's complaint indicate that an appeal is presently pending in the New Hampshire Supreme Court

challenging Weber's civil commitment and related proceedings by the New Hampshire Probate Court.

In addition, Weber states he has been harassed and subjected to intimidation, poisoning, having chemicals sprayed on him, food contamination, financial oppression, lack of assistance, and the denial of justice. Weber claims to have unsuccessfully sought help from state, local and federal law enforcement officers and agencies, other state officials, politicians, the Attorney General, lawyers, the Governor of New Hampshire, the President of the United States, churches, and courts.[1]

Weber now raises the following claims in this Court:[2]

1. The Belmont Police Department improperly detained Weber and used excessive force against him by keeping him in handcuffs for five hours while he awaited evaluation for involuntary civil commitment;

---

[1] Weber has not identified these individuals and entities as defendants to this action. The State of New Hampshire is the only defendant Weber has named in his complaint.

[2] The claims as identified herein will be considered to be the claims raised in Weber's complaint for all purposes. If Weber disagrees with the claims as identified, he must do so by properly objecting to this Report and Recommendation or properly moving to amend his complaint.

2.   The state probate court, its personnel, and the parties to his action there, improperly subjected him to the imposition of: (a) a guardianship, (b) civil commitment, and (c) medication, all against his will;

3.   Society at large, and a landlord at 86 ½ Pleasant Street and the State of New Hampshire in particular, have subjected Weber to harassment and hardship, in violation of his civil rights.

## Discussion

I.   42 U.S.C. 1983

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983[3]; City of Okla. City v. Tuttle, 471 U.S. 808, 829 (1985); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held

---

[3]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  Construing Weber's complaint liberally, he alleges that his federal constitutional rights have been violated by state actors.  Weber's claims, therefore, arise under § 1983.

## II.  Detention at Laconia Hospital

### A.  Five Hours

Weber alleges that on one occasion, one or more officers of the Belmont Police Department detained Weber, handcuffed, for five hours at the Laconia Hospital.  Weber states that he was detained in order to be evaluated for an involuntary civil commitment.

Weber challenges the unreasonable seizure of his person by the police.  These claims arise under the Fourth Amendment. Weber has a generalized right, under the Fourth Amendment, not to be subjected to unreasonable warrantless searches and seizures of his person.  U.S. Const. Am. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . .

..").  Fourth Amendment protections extend to certain civil proceedings, including "involuntary civil commitment proceedings for dangerous persons suffering from mental illness."  McCabe v. Life-Line Ambulance Serv., 77 F.3d 540, 544 (1st Cir. 1996).

The Fourth Amendment governs the period of confinement between warrantless arrest and initial judicial proceeding or court hearing to determine probable cause.  See generally, Villanova v. Abrams, 972 F.2d 792, 797 (7th cir. 1992) (examining cases discussing source of rights for those detained pending a judicial determination that a civil commitment is supported by probable cause); see also Gooden v. Howard County, 917 F.2d 1355, 1363 (4th Ci. 1990) (court adopted Fourth Amendment analysis to determine source of rights for mentally ill person who was detained because he was dangerous), rev'd on other grounds, 954 F.2d 960 (1992).  There can be little dispute that being held in handcuffs by a police officer for five hours constitutes a seizure of his person which, in this case, was apparently made without a judicial determination of probable cause.  See Scott v. Harris, 550 U.S. 372, 381 (2007) ("[A] Fourth amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied.'"

(quoting Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989)); California v. Hodari D., 499 U.S. 621, 624 (1991) (the "quintessential" seizure of a person occurs when an officer physically restrains a citizen or shows authority in a manner which restrains citizen's liberty).

The fundamental concern of the Fourth Amendment is the reasonableness of a particular seizure in light of the actual circumstances of a particular case.  See McCabe, 77 F.3d at 544. "'Reasonableness,' in turn, depends on 'balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"  Id. at 546-47 (quoting O'Connor v. Ortega, 480 U.S. 709, 719 (1987)).  To allege a deprivation of his Fourth Amendment rights, Weber must therefore allege facts asserting that the manner in which he was detained at the Laconia Hospital during his evaluation was objectively unreasonable.  See Scott, 550 U.S. at 381 (analysis of Fourth Amendment claim of unreasonable seizure turns on "whether [officer's] actions were objectively reasonable").

"[T]he State's parens patriae and 'police power' interests in ensuring that 'dangerous' mentally ill persons not harm

themselves or others is beyond dispute." McCabe, 77 F.3d at 547 (citing Rogers v. Okin, 634 F.2d 650, 654 (1st Cir. 1980), rev'd on other grounds, 457 U.S. 291 (1982)).  New Hampshire's involuntary civil commitment statute allows involuntary admission where a mentally person is in such condition, as a result of his mental illness, that he poses a danger to himself or others.  See N.H. Rev. Stat. Ann. ("RSA") 135-C:27.  New Hampshire law permits police officers, under certain circumstances, to place mentally ill persons into custody for transport to an emergency room for evaluation for emergency involuntary admission to the state hospital or other mental health care facility:

> When a peace officer observes a person engaging in behavior which gives the peace officer reasonable suspicion to believe that the person may be suffering from a mental illness and probable cause to believe that unless the person is placed in protective custody the person poses an immediate danger of bodily injury to himself or others, the police officer may place the person in protective custody. Any person taken into protective custody under this paragraph shall be transported directly to an emergency room of a licensed general hospital or to another site designated by the community mental health program serving the area, for the purpose of determining if an involuntary emergency admission shall be ordered. . . . The period of protective custody shall end when a physician or APRN makes a determination as to whether involuntary emergency admission shall be ordered or at the end of 6 hours, whichever event occurs first.

9

RSA 135-C:28, III. Weber states that the police detained him for five hours, an hour less than the statute permits the police to detain him in protective custody for evaluation. Id. Laws enacted by the state legislatures are presumptively constitutional. See Davies Warehouse Co. v. Bowles, 321 U.S. 144, 153 (1944) ("State statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared."); Guillemard-Ginoria v. Contreras-Gomez, 490 F.3d 31, 38 (1st Cir. 2007). In any event, Weber has made no challenge to the statute's constitutionality. By detaining him for five hours, the Belmont Police officer behaved in accordance with a presumptively constitutional state statute. Accordingly, although the duration of a detention can factor into a Fourth Amendment reasonableness determination, see e.g., Muehler v. Mena, 544 U.S. 93, 100 (2005), as set forth here, I cannot find that the five-hour detention at Laconia Hospital was objectively unreasonable, and I recommend that the claim be dismissed.

    B.    Handcuffs

To the extent that Weber's challenge is to the actual handcuffing, and not just the length of his detention, he asserts an excessive force claim under the Fourth Amendment. "To

establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances." Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)).  Reasonableness of a particular seizure "'must be judged from the perspective of a reasonable officer on the scene.'"  Jennings, 499 F.3d at 11 (quoting Graham, 490 U.S. at 396).  The inquiry into reasonableness is objective and requires the examination of the particular facts and circumstances attendant to each case.  See id.  Here, Weber has not included sufficient detail in his complaint to allow the Court to do more than speculate as to the circumstances of his handcuffing.  Weber has not described the events that preceded the handcuffing, what occurred during his five hours in restraints, who was involved, when the incident occurred, or any other facts that allow the Court to infer that a constitutional violation has occurred.  While, in certain circumstances, an extended period in handcuffs could constitute excessive force, see e.g., Muehler, 544 U.S. at 105 (handcuffing woman who posed no physical threat for three hours during execution of search warrant could constitute excessive force violating the Fourth

Amendment); Hope v. Pelzer, 536 U.S. 730, 738 (2002) (handcuffing prisoner to hitching post without water or bathroom for seven hours violated Eighth Amendment prohibition against cruel and unusual punishment), Weber has not stated sufficient facts to allow this claim to go forward at this time.  Accordingly, I recommend that any excessive force claim related to the use of handcuffs be dismissed, without prejudice, as insufficiently pleaded.

III. <u>Claims Challenging Involuntary Commitment, Guardianship and State Probate Court Proceedings</u>

Weber asserts that the state probate court involuntarily committed him and appointed a guardian for him based on untruthful testimony provided by his family and others, and that the probate court's decision therefore violated his constitutional rights.  Weber has appealed the probate court's decision, and the matter is presently pending before the New Hampshire Supreme Court.

The <u>Younger v. Harris</u> abstention doctrine provides that federal courts should, in certain circumstances, abstain from entertaining cases involving issues that are the subject of currently pending state judicial proceedings.  The <u>Younger</u> doctrine applies when: (1) there is an ongoing state proceeding

which is judicial in nature; (2) important state interests are involved; and (3) the plaintiff will have an adequate opportunity in the state proceeding to raise the constitutional challenges presented by the federal law suit.  401 U.S. 37, 43-44 (1971); see Huffman v. Pursue, Ltd., 420 U.S. 592, 603-05 (1975) (discussing that Younger is grounded in principles of comity and noting that federal courts should not, in certain circumstances, interfere with state courts); see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431-32 (1982) (applying the abstention defined in Younger, a criminal case, to civil cases); Rossi v. Gemma, 489 F.3d 26, 34-35 (1st Cir. 2007); Brooks v. N.H. Sup. Ct., 80 F.3d 633, 638 (1st Cir. 1996). Absent extraordinary circumstances, abstention is mandatory, not discretionary, where the federal lawsuit would interfere in a matter that satisfies the three-part test for abstaining under Younger.  See Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005).

"Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, see U.S. Const. art. VI, are fully competent to adjudicate federal constitutional and statutory

claims properly presented by the parties." Casa Marie, Inc. v. Super. Ct., 988 F.2d 252, 262 (1st Cir. 1993). Federal court intervention can be countenanced only where a plaintiff can show there is no opportunity to raise the federal issues in a state court, a state statute under attack is "flagrantly and patently violative of express constitutional prohibitions in every clause," or plaintiffs can show "bad faith, harassment, or any other unusual circumstances that would call for equitable relief." Younger, 401 U.S. at 53-54.

As to the first factor, the proper care of mentally ill person who may be dangerous to themselves or others as a result of their mental illness, or who are sufficiently incapacitated by mental illness so as not to be able to provide for their own personal needs or safety, is undoubtedly a important matter of state interest. See RSA 135-C:1, I(c) (establishing legislative purpose of laws governing emergency involuntary admissions to, inter alia, prevent mentally ill people from harming themselves or others); RSA 464-A:2, XI (defining "incapacity" as a legal disability of any person suffering or likely to suffer substantial harm due to his or her inability to provide for his

or her personal needs for food, clothing, shelter, health care, or safety).

Second, the proceedings are ongoing.  Plaintiff indicates that a hearing or trial was held in the state probate court, and that that court made findings adverse to his position regarding his civil commitment, his guardianship, and his medication.  Plaintiff then appealed the decision, apparently through counsel and the matter is pending on appeal.  See Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 37 (1st Cir. 2004) (deeming that a "proceeding [is] 'ongoing' for Younger purposes until the state appellate process [is] complete" (citing Huffman, 420 U.S. at 607-11)); Bettencourt v. Bd. of Reg. in Med., 904 F.2d 772, 777 (1st Cir. 1990) ("In determining whether federal proceedings would interfere with ongoing state proceedings, the proper point of reference is the date plaintiff filed his federal complaint.") (emphasis in original).

As to the third factor, there is no indication in the record that Weber was denied the opportunity to adjudicate all of the issues he raises in this action in the state courts, including any federal constitutional claims he asserts.  Specifically, plaintiff was not denied the ability to challenge the allegedly

false testimony in the state courts.  Instead, he disagrees with the probate courts decision to accept that testimony as truthful.

Plaintiff claims that he has been the victim of bad faith and harassment by witnesses in the New Hampshire state court proceedings.  Plaintiff has not, however, alleged any facts which permit this Court to infer that his is one of the "extraordinary" cases in which this Court should refrain from abstention.  Such cases involve "core constitutional values . . . threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate," <u>Maymo-Melendez</u>, 364 F.3d at 37 (internal quotations omitted), and cases in which extreme bias completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner.  <u>See</u> <u>e.g.</u>, <u>Gibson v. Berryhill</u>, 411 U.S. 564, 577 (1973).  Plaintiff has not pleaded any facts which indicate that any other exceptions to the <u>Younger</u> doctrine might apply in this matter.  <u>See</u> <u>Perez v. Ledesma</u>, 401 U.S. 82, 85 (1971) (finding that court should except a matter from abstention under <u>Younger</u> only under extraordinary circumstances).

In sum, the facts of this case satisfy the three-part test for abstaining under <u>Younger</u>.  Weber has not alleged sufficient

facts to support this Court's application of any exception to Younger.  Accordingly, I recommend that the claims challenging any of the matters litigated in the probate court, or arising therefrom, be dismissed.[4]

## Conclusion

For the foregoing reasons, I recommend dismissal of this action in its entirety.  See LR 4.3(d)(1)(B)(i).  Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauth. Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead<br>United States Magistrate Judge

Date:     January 4, 2010

cc:       Edward S. Weber, pro se

JM:jba

---

[4] Because I have recommended dismissal of certain of Weber's claims based on the Younger abstention doctrine, I decline to make any comment on the merits of those claims in the interest of comity, as these issues are likely before the state courts.

17